**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MICHAEL ALAN CROOKER,                    *

Petitioner                               *

v                                        *          Civil Action No. ELH-14-1972

WARDEN TIMOTHY STEWART,                  *

Respondent                               *
                                       ***

**MEMORANDUM**

Self-represented petitioner Michael Crooker, a federal prisoner currently incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *See* ECF 1; ECF 1-1.[1]  He complains that "he is being denied medical treatment for end stage liver disease."  ECF 1-1 at 1. Petitioner seeks an injunction mandating that he receive certain medications, Sofosbuvir and Ribavirin, ECF 1-1 at 4, to treat his illness, *i.e.*, "Cirrhosis," ECF 1-1 at 3, caused by hepatitis C. *Id.* at 4.  Crooker asserts that he is in need of the above-mentioned medication because in August of 2013, he "became re-infected with the Hepatitis C Virus, Genotype 2b," and these drugs "have a 97% cure rate. . . .:  ECF 1-1 at 4.

In response to the petition, respondent Timothy Stewart, the Warden, filed a "Motion To Dismiss And Response To Habeas Petition" (ECF 9), along with a memorandum (ECF 9-1) and several exhibits.  ECF 9-2 to 9-5.  Petitioner was notified of his opportunity to file an opposition

---

[1] Petitioner is serving a 15-year sentence.  His current projected release date is August 23, 2017.  ECF 9-1 at 1.  Petitioner's date of birth has been redacted from the medical records.  But, in a 2013 medical record, ECF 9-3 at 5, he is described as a "60 year old white male . . . ."

and exhibits.  ECF 10.[2]  And, he has done so.  ECF 11, ECF 12.  He has also filed exhibits.  *See*

ECF 11-1; ECF 12-1. Respondent replied, ECF 13, and submitted another exhibit.  ECF 13-1.

Petitioner has also filed other submissions.  *See* ECF 14, 16, 21.  In addition, Crooker has

requested discovery (ECF 17), which respondent opposes.  ECF 18.  Petitioner's motion for

leave to file his reply memorandum regarding his discovery request (ECF 19) is granted.[3]

The relevant issues have been briefed.  No hearing is necessary to resolve the motions.

*See* Local Rule 105.6 (D. Md. 2014).    For the reasons that follow, petitioner's request for

discovery shall be denied, respondent's dispositive motion shall be granted, and the petition will

be dismissed.  A certificate of appealability will not issue.

## I.   Factual Background[4]

Petitioner, a federal inmate currently confined at FCI-Cumberland, asserts that he has end

stage liver disease–cirrhosis–, initially caused by hepatitis C virus ("HCV") Genotype 1a. ECF

1-1 at 3-4.  He also suffers from a serious complication, "esophageal varices."  *Id.* at 3.  In 2012-

---

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on August 5, 2014, plaintiff was notified that defendant had filed a dispositive motion, the granting of which could result in the dismissal of his action.  ECF 10.  Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court.  *Id.*

[3] To the extent that petitioner raised new claims in his surreply (ECF 14), regarding denial of medical care, including denial of an  endoscopy, CT scans, and gastroenterology follow up, those claims are not properly before the court.  If petitioner believes he has been denied constitutionally adequate health care he is free to file a new civil rights complaint against the appropriate parties raising those allegations.  And, for reasons apparent herein, petitioner's request for an independent medical examination, contained in ECF 10 and 14, opposed by respondent, ECF 13, shall also be denied.

[4] All citations are to the page numbers generated by the court's electronic filing system.

13, petitioner received medication therapy which he states cured his underlying HCV infection. In or about August 2013, he was re-infected with HCV Genotype 2b. *Id.*

On October 11, 2013, petitioner was examined at Beth-Israel Deaconess Medical Center/Liver Center in Boston. He alleges that it was recommended that he be treated with Sofosbuvir and Ribavirin as soon as Sofosbuvir was approved by the FDA. Petitioner was advised that he would need to take the medication for twelve weeks and claims he was told that there is a 97% cure rate of HCV Genotype 2b using this medication therapy. *Id.* at 4.

Petitioner was transferred to FCI-Cumberland in November 2013. *Id.* Sofosbuvir was approved by the FDA on December 6, 2013. *Id.* Crooker maintains that "panels of doctors in the community are recommending it be used on a priority basis with those patients like [him] who already have progressed to cirrhosis." *Id.* at 4. Nevertheless, FCI-Cumberland has refused to provide him with Sofosbuvir (brand name Sovaldi) or the other requested medication. *Id.* at 4.

Additional facts are included primarily in the *Bivens* Discussion.

## II. Discussion

1. Habeas claim

Petitioner has brought suit pursuant to 28 U.S.C. §2241, seeking the medical treatment described above. ECF 1. An inmate may bring a petition for writ of habeas corpus under §2241 where he alleges he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. §2241(a)(3). A § 2241 petition attacks the fact or length of confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973).

Respondent has moved to dismiss, claiming Crooker does not attack the fact or duration of his confinement. ECF 9 at 1. Rather, the Warden claims that Crooker challenges the

conditions of his confinement, *i.e.*, the alleged inadequacy of his medical care, which is not actionable under § 2241.  *Id.*

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint.  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show that [the] claim has substantive plausibility."  *Johnson v. City of Shelby, Miss.*, ____ U.S. ____, 135 S. Ct. 346, 347 (2014); *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *Twombly*, 550 U.S. at 570; *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).   In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011).   Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the

4

plaintiff is unable to 'state a claim to relief . . . .'"  *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).

Here, dismissal is warranted on the face of the Petition.

The circuits are split as to whether suits challenging conditions of confinement may be brought under §2241. *Compare Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005) ("If a prisoner is not challenging the fact of his confinement, but instead the conditions under which he is being held, we have held that [he] must use a § 1983 or *Bivens* theory."), and *Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000) ("[F]ederal claims challenging the conditions of his confinement generally do not arise under § 2241.") with *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014) (stating that "one in custody may challenge the conditions of his confinement in a petition for habeas corpus. . . .").

However, the Fourth Circuit has said that where a petitioner does not assert entitlement to release, the claim is properly treated as a suit under 42 U.S.C. § 1983, or in the case of a federal inmate, a *Bivens* claim, under *Bivens v. Six Unknown Named Agents of Fed Bureau of Narcotics*, 403 U.S. 388 (1971), which is the federal equivalent of § 1983.  In the recent case of *Braddy v. Wilson*, 580 Fed. Appx. 172 (4th Cir. 2014), for example, the Fourth Circuit dismissed a habeas petition alleging a condition of confinement claim as improperly brought under § 2241.  *See also Lee v. Winston,* 717 F.2d 888, 891-92 (4th Cir. 1983) (suit seeking to enjoin state officials from forcing defendant to undergo medical procedure was properly brought under civil rights statutes and not cognizable as a habeas petition); *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978)

(holding petitioner's claim which did not relate to release from parole must be treated as suit under § 1983 not as a petition for habeas relief).[5]

District courts throughout The Fourth Circuit have been unwilling to permit conditions claims to proceed under § 2241.  *See, e.g.*, *Hawkins v. Perdue*, 2014 WL 1962216 at *2 (N.D. W.Va. May 15, 2014) (holding challenges to the conditions of confinement are not cognizable under § 2241, but instead must be pursued through a *Bivens* action and finding district courts within the Fourth Circuit have demonstrated "a consistent reluctance to permit prisoners challenging the conditions of their confinement to proceed under § 2241"); *Lawrence v. Drew*, 2010 WL 8731904 at *2 (D.S.C. Nov. 23, 2010) (holding that  petitioner challenging a condition of  confinement, rather than the execution of his sentence, failed to state a cognizable claim under § 2241); *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 695 (E.D. Va. 2005) (claim regarding denial of medical care not cognizable in habeas proceeding); *Mendez v. Beeler*, 2005 WL 4753402 *1 (E.D.N.C. May 10, 2005) (challenge to condition of  confinement appropriately brought as a *Bivens* action, rather than as an action seeking relief under § 2241); *McCain v. Garrity*, 2002 WL 32362032 *2 (E.D. Va. July 16, 2002) (case regarding the "quality of medical care while incarcerated challenges a prisoner's conditions of confinement and therefore properly lies in a § 1983 civil rights action or a *Bivens* action"); *Johnson v. Solomon*, 484 F. Supp. 278, 282 n.2 (D. Md. 1979) (challenges to "conditions of [] confinement" would "only be cognizable under 42 U.S.C. § 1983").

---

[5] The court is aware that in at least one case, *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975), the Fourth Circuit permitted a claim to proceed under § 2241, although it challenged the imposition of segregated confinement.  But, it may be that the case was permitted to proceed due to a loss of diminution of confinement credits or some other factor that impacted the duration or execution of the petitioner's sentence.

Here, petitioner does not allege that he is entitled to release.  Rather, he asserts an Eighth Amendment claim regarding the denial of adequate medical care.  Petitioner's reliance on *Aamer v. Obama*, 742 F.3d 1023 (C.A.D.C. 2014), to support his contention that a habeas petition is the proper vehicle to bring his claim regarding inadequate medical care is misplaced.

The *Aamer* Court, in finding that petitioners could challenge the conditions of their confinement (forced feedings) via a petition under § 2241, dealt with the unique statutory basis, custody, and jurisdictional status of the detainees held at Guantanamo Bay and applied D.C. Court of Appeals precedent regarding the scope of the writ. *Id.* at 1032.  *Aamer* is not controlling law in this Circuit.  This court must follow the Supreme Court and Fourth Circuit authority, which holds that a prisoner may not challenge conditions of confinement under § 2241. Accordingly, the petition for writ of habeas is subject to dismissal to the extent that it is predicated on 28 U.S.C. § 2241.

### III.  *Bivens*

In arguing against dismissal of the Petition, Crooker claims that he cannot maintain a *Bivens* action because "[t]he actors are all federal actors "and thus they are "immune" from suit. ECF 1-1 at 1.  Therefore, he claims he can only proceed by way of an action under § 2241. Petitioner is incorrect.  Dr. Moubarek, the Clinical Director in charge of petitioner's care, is a federal BOP employee.  Therefore, he is subject to a *Bivens* action.  *See* ECF 9-2.

Pleadings of self-represented litigants are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  To avoid unnecessary delay, I shall construe the Petition as a *Bivens* action.  This will avoid the need for Crooker to refile and recast his suit.  It will also avoid needless delay.  For the reasons addressed below, Crooker is not entitled to the requested relief.

### A.  Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). However, both parties filed exhibits.  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U. S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *see Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

If the court considers extraneous materials, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  However, a court

---

[6] A court may also consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

may not convert a motion to dismiss to one for summary judgment, *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d at 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

Crooker was provided with the requisite notice. *See* ECF 10. And, as noted, he filed multiple responses and exhibits.

Nevertheless, summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemrours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). But, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d) (formerly Rule 56(d)), explaining why "for specified reasons, it cannot present facts

essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

Petitioner has filed a request for discovery, ECF 17, which the Warden opposes.  ECF 18. Crooker seeks information regarding the number of inmates at FCI-Cumberland who received certain medication combinations for the treatment of hepatitis as well as the number of inmates at FCI-Cumberland with hepatitis C induced cirrhosis  and  hepatitis C virus. ECF 17.  He also seeks information on the number of inmates throughout the Bureau of Prisons ("BOP") who have received certain medication to treat hepatitis; been treated for hepatitis C with Sofosbuvir or Simeprevir; are infected with hepatitis C.  Additionally, petitioner seeks information regarding the number of BOP prisons that maintain a confidential detox protocol within the medical department; and whether there is a means for an inmate confined at FMC-Devens who is addicted to opioid drugs to receive medical detoxification treatment without subjecting himself to a Rule 112 violation.  In addition, Crooker seeks information regarding the number of inmates

nationwide who are enrolled in the BOP's Residential Drug Abuse Prevention Program ("RDAP") and information regarding their eligibility for early release. *Id*. at 1-3.

In order to be granted discovery in a habeas case, a federal habeas petitioner must demonstrate good cause. *See Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (finding habeas petitioner must demonstrate good cause before discovery will be permitted). In order to demonstrate good cause the petitioner "must include specific allegations demonstrating he is entitled to habeas relief." *Id*. at 213 (citing *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). Crooker has not done so. Even if this is a *Bivens* case, Crooker has not shown entitlement to the requested discovery under Fed. R. Civ. P. 56(d).

In his Petition, Crooker asserts that he has been denied specific medication to treat his hepatitis C. ECF 1. Respondent does not dispute that petitioner has not been provided with the medication he seeks. Rather, the Warden explains that Crooker's physician has found that petitioner is not a good candidate for that treatment regimen. ECF 9.

Petitioner has failed to explain how the discovery he requests would aid him in responding to the Warden's motion. Information regarding the treatment status of other BOP inmates is not germane to petitioner's treatment protocol. Information regarding drug treatment programs and the RDAP as administered throughout the BOP is likewise not relevant to petitioner's claim of inadequate medical care and entitlement to the requested medication to treat his illness.

Additionally, it is not clear that all of the information petitioner seeks is subject to discovery. To the extent petitioner is requesting confidential medical information regarding diagnosis and treatment of particular inmates throughout the BOP, the disclosure of such

information could violate the Health Insurance and Portability Accountability Act of 1996, 42 U.S.C. § 1320d *et seq* ("HIPAA").

In sum, there is simply no indication that any of the materials/information sought by Crooker would create a genuine issue of material fact. Petitioner has failed to explain how the discovery requested would aid him in responding to the Warden's Motion to dismiss. As petitioner has failed to make the requisite showing with respect to the standards for discovery under Rule 56(d) and/or the habeas standard, his motion for discovery will be denied.

Despite my ruling as to Crooker's request for discovery, I believe it is appropriate to consider respondent's motion as if it were one for summary judgment. As noted, both sides have thoroughly addressed the issues and submitted many exhibits. And, to do so will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). Moreover, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Tolan v. Cotton*, ____ U.S. ____, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, __ F.3d ___, No. 13-2212, slip op. at 12 (4th Cir. March 12, 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See, e.g.*, *Boone v. Stallings*, 583 Fed. App'x. 174 (4th Cir. 2014) (per curiam).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

## B. Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991)).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison

staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see Hudson v. McMillan*, 503 U.S. 1, 9 (1992). As the Fourth Circuit recently explained in *Lightsey*, 775 F.3d at 178, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."

Therefore, "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178   The Fourth Circuit characterized this as an "exacting standard. . . ." *Id*. Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. at 9 (there is no expectation that prisoners will be provided with unqualified access to health care). As indicated, proof of an objectively serious medical condition does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot

be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

And, of import here, "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." *Lopez v. Green*, 2012 WL 1999868, at *2-3 (D. Md. June 4, 2012) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Moreover, "any negligence or malpractice on the part of … doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105. *See Makdessi v. Fields*, _____ F.3d _____, No. 13-7606, slip op. at 14 (4th Cir., March 12, 2015). And, "[a] prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence. . . ." *Makdessi*, slip op. at 15.

Although the Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs, it does not require that a prisoner receive medical care by a provider of his choice. Moreover, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not

simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). And, as noted, an inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d at 849; *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977).

Petitioner was diagnosed with HCV-genotype 1a in 1997. ECF 9-2 (First Declaration of Mohamed Moubarek, M.D.), at 2. Beginning in July 2012, while incarcerated at FMC-Devens in Massachusetts, petitioner received a 48 week long course of drug treatment that included Pegylated Interferon, Ribavirin, and Victrelis.

Dr. Moubarek, the Clinical Director at FCI-Cumberland, has been a licensed physician since 1994. ECF 9-2. He has treated plaintiff and has also supervised his medical care. *Id.* He avers that the treatment Crooker previously received was the "gold standard" for treating petitioner's illness. *Id*., ¶ 5. The treatment appeared successful, with petitioner's viral load dropping to "undetectable" levels as of August 2013. *Id.*

Dr. Moubarek avers: "In 2013 . . . after receiving a 48 week treatment to cure his hepatitis C, genotype 1, which appeared to have cured the disease, inmate Crooker continued his risky behavior – sharing needles with another inmate-leading to re-infection." ECF 9-2, ¶ 6. And, according to Moubarek, petitioner repeatedly refused to enter an appropriate drug treatment program. *Id.* ¶ 7.[7]

In October 2013, Crooker was diagnosed as re-infected with HCV, genotype2b strain, due to his sharing needles with another inmate in order to inject crushed morphine. The other inmate had HCV genotype 2b. ECF 9-2, ¶ 6.

---

[7] Petitioner indicates that he chose not to participate in the RDAP program because he learned from other inmates that it is rife with problems. Therefore, he chose an alternative program, mentioned, *infra*. ECF 11-1 at 5.

Moubarek explains that a "compensated liver" refers to whether the liver can filter the necessary toxins out of the bloodstream.   ECF 13-2 (Second Moubarek Declaration).   He explains that petitioner is receiving conservative treatment for his current HCV infection.   *Id*.   He receives the medications Loperamide and Nadolol, which manage complications arising from HCV infection.   *Id*; ECF 13-2.   His viral loads are monitored and he receives liver ultrasounds every six months to monitor for decomposition of his liver. *Id*.; ECF 9-3 (medical records) at 4, 6.   Petitioner is asymptomatic.   No evidence of decompensation has been found and petitioner has reported feeling well.   *Id*. at 7, 9-11, 13-14.

Crooker challenges Moubarek's qualifications and his assertions.   *See* ECF 11.   He claims that Moubarek is a mere "General Practioner," *id*. at 4, who has ignored the recommendations of expert hepatologists and others.   *Id*.   He asserts:   "This is not about 'disagreement' with treatment decisions. . . .   This is about a complete denial of treatment," *id.*, amounting to "deliberate indifference."   In his view, the treatment is of no use in destroying the HCV 2b virus.   *Id.*   In Crooker's Affidavit, ECF 11-1, he disputes that Dr. Moubarek ever examined him.   *Id.* at 1.

Petitioner also states that the medications mentioned by Moubarek are prescribed to treat his high blood pressure and esophageal varices.   ECF 11 at 4.   He disputes respondent's contention that his viral load is being monitored and maintains that he is a prime candidate for the treatment he seeks.   *Id.* at 5, 6, 8.   Petitioner does not dispute that there is no evidence of decompensation of his liver or that he receives regular ultrasounds, *id*. at 6-7, although he claims the ultrasounds are for monitoring for cancer.

Petitioner indicates that he was prescribed morphine in April 2013 and "relapsed and became addicted. . . ."   ECF 11-1 at 2.   But, he claims he has not used any illegal drugs since

about August 2013.  *Id.* at 3.  He claims he used morphine due to the lack of resources available to him from the BOP in order to deal with his addiction.  ECF 11-1 at 2-3.

As indicated, Crooker seeks to be placed on a newly approved drug treatment regimen, which includes dosages of Sofosbuvir and Ribavirin.  ECF 9-2 at 2.  He insists that he was prescribed Sofosbuvir by Dr. Alan Bonder at Beth Israel Hospital.  This is inaccurate.  The medical report of Dr. Bonder reflects that he told Crooker that newer treatments were coming available, which would likely be without Interferon, and petitioner "should wait for these treatments to become available."  ECF 9-3 at 14-15.

In any event, petitioner's individual case was considered by BOP.  The contraindications for treatment listed in the BOP guidance for treatment of hepatitis were also reviewed.  Dr. Moubarek, Clinical Director at FCI-Cumberland, determined petitioner is not a proper candidate for the new treatment regimen.  *Id.*  He notes that petitioner has a severely compromised liver, *id.*, and drugs such as Sofosbuvir can lead to further liver damage.  ECF 9-2 at 3; ECF 9-5 at 4, 7-8, 15; ECF 9-3 at 18.  Additionally, Moubarek is concerned with petitioner's suitability for the treatment protocol given his recent drug activity that led to Crooker's reinfection with HCV, as well as his refusal to enter into a drug treatment program.  ECF 9-2 at 3; ECF 9-4.[8]

Dr. Moubarek explains that petitioner's liver function is lower than a normal person would experience due to his lengthy drug use and prior exposure to HCV.  ECF 13-2.  Further, Moubarek observes that any additional toxic substances injected into petitioner's system, including abuse of drugs, or Sofosbuvir, could move petitioner's  liver from being "compensated" to "decompensated."  *Id.*   Moubarek's concern regarding introduction of

---

[8]   After the institution of this case, petitioner completed 25+ hours of alcoholic/narcotics anonymous and received a certificate.  ECF 11-1 at 9.  Nevertheless, the NA program, inmate run, is not the intensive nine-month program managed by a BOP psychologist, which Dr. Moubarek would like petitioner to attend.  ECF 13-2.

Sofosbuvir appears reasonable in light of petitioner's diminished liver function and longstanding drug use.

The BOP's current guidelines for HCV treatment with Sofosbuvir provide that treatment regimens "should have no contraindications to any component, and [inmates] should demonstrate a willingness and an ability to adhere to a rigorous treatment regimen and to abstain from high-risk activities while incarcerated." ECF 9-2 at 2; ECF 9-5 at 5. Based on the foregoing, Dr. Moubarek determined petitioner is not a candidate for the treatment regimen at the time but could be reevaluated in the future ECF 9-2 at 3.

Notwithstanding Crooker's protestations that material facts are in dispute, his complaint amounts to a disagreement with the course of treatment prescribed by Dr. Moubarek. This does not provide the framework for a viable federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975); *see also Hathaway v. Coughlin*, 37 F.3d 63, 70 (2d Cir. 1994) ("Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [the court] will not second guess the doctors."). Courts are not, under the deliberate indifference inquiry, to "second guess" the reasoned treatment decisions of health care professionals. *Bowring v. Goodwin*, 551 F.2d 44, 48 (4th Cir. 1977).

Moreover, a prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The

*Bowring* Court concluded that the right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

Here, petitioner's HCV is being treated.  It is the considered opinion of petitioner's medical provider that he is not a good candidate for the treatment regimen he desires.  This court will not second guess such a determination.  *See, e.g., Loeber v. Andem*, 487 Fed. Appx. 548, 549 (11th Cir. 2012) (upholding medical professional's decision to provide alternative HCV treatment rather than drug regimen requested by inmate); *Iseley v. Dragovich*, 90 Fed. Appx. 577, 581 (3d Cir. 2004) (finding no deliberate indifference where doctor found that "Interferon treatment was contraindicated in [plaintiff's] case because his condition had not yet progressed to the point where such treatment would have been appropriate").

To be sure, petitioner's HCV is a serious medical condition.  But, he has failed to demonstrate that he is at risk of serious harm if he is not administered the new drug regimen.  In fact, under the conservative course of treatment now in progress, his condition has remained stable, he is asymptomatic, and his liver ultrasounds show no acute distress.  As petitioner cannot demonstrate an objective medical need for the drug regimen requested, there can be no finding of deliberate indifference.

Moreover, petitioner cannot demonstrate the subjective component of his medical claim.  The BOP aggressively treated petitioner's first infection with HCV. He continues to receive treatment and his symptoms are regularly monitored.  Dr. Moubarek has made a reasoned decision that administration of the requested drugs is not proper in petitioner's case for a number of reasons, including petitioner's physical condition (compromised liver) as well as his behavior (recent illicit drug use and refusal to participate in RDAP).  In light of the foregoing, respondent is entitled to summary judgment.

**Conclusion**

The dispositive motion filed on behalf of respondent will be granted.[9]  The petition for habeas relief is dismissed and a certificate of appealability shall not issue.  Petitioner's request for injunctive relief is denied.   A separate Order follows.


March 13, 2015                                    _____/s/_____
Date                                                    Ellen L. Hollander
                                                        United States District Judge

---

[9] Having found no constitutional injury, the court need not address respondent's claim of qualified immunity.